# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO HERNANDEZ CRUZ, | 1:07-CV-00424 LJO GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| WARDEN OF AVENAL STATE PRISON, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, after being convicted on July 18, 1986, by a jury of second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. He was sentenced to serve an indeterminate term of 15 years to life with the possibility of parole. See Answer, Exhibit 2.

Petitioner's minimum eligible parole date was April 23, 1996. Id. On January 31, 2006, Petitioner's seventh parole suitability hearing was held before the California Board of Parole Hearings (hereinafter "Board"). Id. Petitioner participated in the hearing and was represented by

counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for three years. Id. at 49.

Petitioner then sought relief in the state courts. Petitioner filed a petition for writ of habeas corpus on May 15, 2006, in the Kern County Superior Court. See Answer, Exhibit 5. It was denied on July 10, 2006, in a reasoned opinion. Id. He then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, on July 26, 2006. See Answer, Exhibit 6. The petition was denied on November 27, 2006. Id. Petitioner then filed a petition for review in the California Supreme Court on December 11, 2006. See Answer, Exhibit 7. The petition was denied without comment on February 14, 2007. Id.

Petitioner filed the instant petition for writ of habeas corpus in this Court on March 19, 2007. Petitioner challenges the 2006 decision of the Board denying parole. He contends the Board's decision finding him unsuitable because he poses an unreasonable risk of danger to society was arbitrary and capricious and violated his procedural and substantive due process rights. Second, he claims the Board failed to follow the mandates set forth in Cal. Penal Code §§ 3041(a), (b), and 3041.5(b)(2). Third, he argues the cumulative effect of the unconstitutional actions of the Board have resulted in a due process violation. Respondent filed an answer to the petition on August 23, 2007, and Petitioner filed a traverse on September 26, 2007.

**FACTUAL BACKGROUND**[1]

The victim, Ricky Van Dunlap, sold some inferior drugs to Albert Angelo at a party in Kern County. When a dispute arose between the two men, Petitioner grabbed Dunlap from behind. Dunlap broke free and kicked Petitioner in the groin. Petitioner lunged at Dunlap and drove him into a wall. At the same time, Petitioner drove a knife three inches deep into Dunlap's chest, puncturing his heart.

Dunlap fled and Petitioner pursued him. Dunlap died in a nearby alley. When Petitioner returned to the party, he warned all of the partygoers that they "hadn't seen nothing." Petitioner then left for Arizona, but returned to Kern County the next day and turned himself in.

---

[1] The factual background is derived from the opinion of the California Court of Appeals, Fifth Appellate District. See Answer, Exhibit 3.

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

3

*quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Petitioner's claims were presented on May 15, 2006, in a petition for writ of habeas corpus to the Kern County Superior Court. See Answer, Exhibit 5. On July 10, 2006, the superior court denied the claims in a reasoned opinion. Id. Petitioner then presented those claims to the appellate court and to the California Supreme Court. Both petitions were summarily denied. See Answer, Exhibits 6, 7. The California Supreme Court, by its "silent order" denying review of the superior court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. Petitioner argues his procedural due process rights were violated. Nevertheless, it is clear these three guarantees were given. He received notice of the hearing, he was heard at the hearing and he was told why he did not qualify for parole.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the

1  record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."
2  Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added).
3  The Ninth Circuit has held that this same standard also extends to parole determinations.
4  Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846, 851
5  (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s]
6  clearly established that a parole board's decision deprives a prisoner of due process with respect
7  to this interest if the board's decision is not supported by 'some evidence in the record,' or is
8  'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was
9  supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and
10 regulations governing parole suitability determinations in the relevant state." Hayward, 512 F.3d
11 at 542, *quoting* Irons, 505 F.3d at 851. Here, the Court must look to California law and review
12 the record. In reviewing the record and determining whether the "some evidence" standard is
13 met, the Court need not examine the entire record, independently assess the credibility of
14 witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

15     California law provides that after an inmate has served the minimum term of confinement
16 required by statute, the Board "shall set a release date unless it determines that the gravity of the
17 current convicted offense or offenses, or the timing and gravity of current or past convicted
18 offense or offenses, is such that consideration of the public safety requires a more lengthy period
19 of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel
20 the prisoner will pose an unreasonable risk of danger to society if released from prison," the
21 prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The
22 Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it
23 has set forth in the California Code of Regulations.

24     To determine whether 'some evidence' supports the state court decision, the test is not
25 whether some evidence supports the reasons cited for denying parole, "but whether some
26 evidence indicates a parolee's release unreasonably endangers public safety." Hayward, 512 F.3d
27 at 543, *quoting* In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

28     In denying parole in this case, the Board provided several reasons for its decision: 1) The

nature and gravity of the commitment offense including Petitioner's lack of insight and tendency to minimize responsibility; 2) Substance abuse history; 3) Institutional behavior; and 4) Prior criminal history. See Answer, Exhibit 2 at 49-54. Petitioner argues there is no evidence to support the finding that he currently poses an unreasonable risk of danger to society if released. Review of the Board's decision reveals the state court decision approving the Board's determination of unsuitability was not unreasonable.

The first factor mentioned by the Board in its decision was the commitment offense itself. As noted by the superior court, Petitioner "stabbed to death a twenty-four year old man whom he hardly knew because a friend was arguing with the victim over an illegal $15 drug transaction." See Answer, Exhibit 5. Pursuant to § 2402(b), the Board considered Petitioner behavior immediately after the crime. After the stabbing, Petitioner walked to the victim with the buck knife in his hand and stated, "That's what I do to people who burn me, I stab the mother fucker." See Answer, Exhibit 5. He then turned to the people around him at the party and said, "If anybody says anything, I'll come and get the . . . ." Id. A witness also testified that Petitioner directed them that "we didn't see nothing and we didn't hear nothing." See Answer, Exhibit 2 at 51. Petitioner's own rendition of the events was completely different. In her 2005 psychological evaluation of Petitioner, Dr. Corine Schroader noted that Petitioner's "depiction of the crime is very self-serving. He stated that [it was an] accident that occurred as he lost his balance and accidentally stabbed the victim. He had an inappropriate grin on [his] face as he said this and commented on the . . . he sees in people's faces when he describes what happened." Id. at 36. She recommended that Petitioner "not only needs to accept and support the depiction of the crime in the POR without qualification or equivocation, he needs to come to terms with his pattern of obstefation [sic] and his view of the crime as a result of losing his balance." Id. The Board concluded that the disparity between the facts as determined at trial and Petitioner's own rendition amount to a lack of insight into his own behavior and his tendency to minimize his responsibility. Under §§ 2402(b) and 2402(c)(1), the Board determined Petitioner posed an unreasonable risk of danger to society. The state court determined there was some evidence to support this finding. Based on the above, the decision was reasonable.

The Board also found Petitioner's extensive substance abuse history had not been fully addressed by Petitioner. He admitted that he abused alcohol in the past. He also stated he was under the influence of alcohol at the time of the offense. In addition, he sustained a serious rules violation for manufacturing pruno in prison. Yet, he admitted he had attended an Alcoholics Anonymous program in the past, but "decided it wasn't for [him]." See Answer, Exhibit 2 at 24. He stated he was in a Buddhist group that "meets his spiritual needs." Id. It goes without saying that it wasn't Petitioner's spiritual needs the Board was deeply concerned about, but his need for further therapy in dealing with his alcohol addiction. Petitioner conceded he was not currently in any kind of self-help group. Id. Based on Petitioner's substance abuse history and his failure to address it sufficiently in prison, the Board determined Petitioner remained an unreasonable risk of danger. The state court determination that some evidence supported this conclusion was not unreasonable.

In addition to the commitment offense itself, the Board also noted Petitioner had a previous record of criminal behavior pursuant to § 2402(c)(2) and had demonstrated negative institutional behavior pursuant to § 2402(c)(6). Petitioner had been convicted twice for carrying a weapon, and once for impersonating a police officer. See Answer, Exhibit 2 at 10-12. He sustained a CDC-115 serious rules violation for attempted battery on a non-prisoner. Id. at 21. He had also sustained a prior serious rules violation report and four CDC-128 counseling chronos with the last one being in 2004 for possession of controlled medications. Id. at 29. The Board also noted that of "real concern" were Petitioner's actions following his rules violation for attempted battery. In 2004, he continued to contact the victim, D. Johnson, regarding her statements. Johnson stated, "I feel that I am continually being harassed as I was told I would not be contacted any longer regarding this matter." Id. at 31. She further stated, "I am reportedly fearful of him," and "I now feel that it has a [sic] becoming a stalking issue." Id. at 31, 34. After questioning Petitioner regarding this incident, the Board noted Petitioner "gave absolutely no consideration for the impact that [his] behavior would have on her." Id. at 52. The Board concluded that Petitioner demonstrated himself to be an unreasonable risk of danger. The state court finding some evidence supported this conclusion was not unreasonable.

The Board also considered various circumstances demonstrating suitability pursuant to § 2402(d). Petitioner had completed vocational training and received positive work reports while in prison. He was commended for his past participation in self-help programs; however, the Board noted he had failed to continue his programming in the recent past. In any case, the Board found the nature of Petitioner's offense, his lack of insight, his characterization of the events, his recent psychological evaluation, his pattern of criminal conduct prior to imprisonment, his substance abuse history, and his negative institutional behavior were indicative of a current danger to the public if released. This Court cannot conclude that the state court rejection of Petitioner's claim - that the Board's determination was not supported by some evidence - was unreasonable.

Petitioner also contends the Board failed to follow the mandates of Cal. Penal Code § 3041(a) in setting a parole release date. This argument fails because claims that the Board failed to follow state law are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Petitioner further argues the cumulative effect of the errors committed by the Board resulted in a due process violation. This claim must also be rejected, because as discussed above, there were no constitutional errors to accumulate.

Finally, Petitioner claims the Board has improperly relied on the immutable circumstances of the offense in denying him parole. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation," this is not the situation here. As fully discussed above, the Board did not rely on not just the commitment offense and Petitioner's conduct prior to imprisonment.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DENIED; and
2. The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 28, 2008**                    **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE